UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| EVELYN SCOTT-DAVIS, individually and on behalf of all others similarly situated,<br><br>  Plaintiff,<br><br>  v.<br><br>NEW YORK LIFE INSURANCE COMPANY,<br><br>  Defendant. | No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Evelyn Scott-Davis, individually and on behalf of all others similarly situated, brings this Complaint against New York Life Insurance Company ("Defendant" or "New York Life"). Plaintiff alleges the following based on (a) personal knowledge, (b) the investigation of counsel, and (c) information and belief.

## INTRODUCTION

1. Defendant New York Life is a major insurance provider, specializing in whole life insurance policies.

2. Through one of its insurance vehicles, its AARP Life Insurance Program, New York Life contracts to provide life insurance policies which are payable to the policyholder's beneficiaries upon the death of the policyholder.

3. These insurance policies include an incontestability clause, which states that New York Life cannot contest the validity of the policy after it has been in effect for two years of the policyholder's life.

4. Contrary to the express contractual language, however, upon information and belief

New York Life habitually breaches this clause by challenging the validity of the contract after the two-year period expires, and unilaterally rescinds the policy to avoid issuing the required payment to the policy's beneficiaries.

## PARTIES

**A.    Plaintiff**

5.    Plaintiff Evelyn Scott-Davis is resident of Pennsylvania, and currently resides in Philadelphia, Pennsylvania.

6.    On October 14, 2016, Plaintiff Scott-Davis' grandson, Kent Bulcavage, obtained a $15,000 life insurance policy through New York Life's AARP Life Insurance Program, naming Plaintiff Scott-Davis as one of two equal beneficiaries. Mr. Bulcavage signed the life insurance policy application.

7.    Mr. Bulcavage further named Plaintiff Scott-Davis as the executor and sole beneficiary of his estate in a will executed on February 28, 2001, and granted her Durable Power of Attorney on April 4, 2012.

8.    On December 18, 2019, Mr. Bulcavage passed away, entitling Plaintiff Scott-Davis to a $15,000 payment as the beneficiary of his life insurance policy.

9.    After Mr. Bulcavage's death, Plaintiff Scott-Davis attempted to collect on the policy, but was denied payment in a letter from New York Life dated May 1, 2020. In its letter, New York Life claimed it was denying payment, because it had "reason to believe that the contract was fraudulently purchased." Upon further communication with New York Life, it informed Plaintiff that it believed she signed the application, instead of Mr. Bulcavage, which is false. New York Life rescinded the policy and returned the amount of premiums paid to Plaintiff, but Plaintiff declined and sent the check back to New York Life.

10. Regardless of the alleged merit of New York Life's position, the two-year contestability period expired in October 2018.

11. As a result of New York Life's conduct, Plaintiff has been harmed, at minimum, in the amount she was entitled to under Mr. Bulcavage's life insurance policy.

**B.    Defendant**

12. Defendant New York Life Insurance Company is a New York corporation with its principal place of business at 51 Madison Avenue, New York, New York, 10010.

13. New York Life is a private mutual life insurance company with a primary business of marketing, designing, and selling life insurance products.

14. New York Life engages in continuous and substantial business throughout the United States, including in Pennsylvania.

**II.    JURISDICTION AND VENUE**

15. This Court has subject matter jurisdiction over the claims asserted herein pursuant to the Class Action Fairness Act, 28 U.S.C. §1332(d)(2), because Plaintiff and some of the members of the proposed classes are citizens of a State different from that of the Defendant and, upon the original filing of this Complaint, members of the putative class resided in states around the country; there are more than 100 putative class members; and the amount in controversy exceeds $5 million, exclusive of interest and costs.

16. The Court also has personal jurisdiction over the parties because Defendant conducts a major part of their national operations, advertising, and sales through continuous business activity in this District.

17. Venue is further appropriate pursuant to 28 U.S.C. §1391 because Defendant conducts business in this District, because it has specifically marketed, advertised, and contracted extensively in Pennsylvania. Venue is also proper in this Court because a substantial part of the

events and actions giving rise to the harm suffered by Plaintiff and members of the proposed Class occurred in this District.

## FACTUAL BACKGROUND

**A.    New York Life Insurance**

18.    New York Life has been continually doing business since its launch in 1841 under its original name, Nautilus Mutual Life.[1]

19.    Since then, New York Life has grown into a multi-billion-dollar Fortune 100 company. It is the third-largest life insurance company, and seventy-first largest corporation, in the United States.[2]

20.    New York Life's primary product is its whole life insurance policies, a broad family of products which guarantee lifelong coverage and eventual payout to the holder's beneficiaries, as long as the contractual premiums are paid over the policyholder's life.

21.    Some of these policies are issued through New York Life's AARP Life Insurance Program which provides senior clients with life insurance coverage through a group program which is offered to American Association of Retired Persons ("AARP") members.[3]

22.    The application process for this insurance program is nominal, consisting only of four questions. New York Life does not request medical records, medical record authorization, or a physical examination as a prerequisite to granting the policy.

---

[1] https://www.newyorklife.com/newsroom/history-five-facts-founding-new-york-life (last visited Apr. 11, 2021).
[2] https://www.newyorklife.com/newsroom/our-awards-and-recognition (last visited Apr. 11, 2021).
[3] https://www.nylaarp.com/ (last visited Apr. 11, 2021).


23.     Despite its limited upfront diligence, upon information and belief New York Life habitually contests these policies after the death of the policyholder, in violation of its contractual obligations.

**B.     New York Life's breach of the incontestability clause**

24.     Pursuant to 40 P.S. § 510(c), all New York Life policies issued in the Commonwealth of Pennsylvania must contain an incontestability clause.

25.     The incontestability clause included in the life insurance policy that named Plaintiff as a beneficiary states:

> Except for the nonpayment of PREMIUMS, [NEW YORK LIFE] **cannot** contest the validity of the insurance or reinstated insurance after it has been in force for two years during the INSURED's lifetime from: (1) the INSURANCE DATE, and (2) the date the insurance is reinstated if applicable. To contest [NEW YORK LIFE] will only rely upon the statements signed by the OWNER in applying for such insurance. A copy of all statements must be furnished to the OWNER or to the beneficiary.[4]

(emphasis added).

26.     Upon information and belief New York Life, however, regularly denies payment to policyholders after incontestability period has elapsed. Although New York Life claims in these denials that it is "rescinding" the insurance agreement, it does not engage in the process for recission outlined in its own policy, which is initiated by the filing of a civil action. Instead, New York Life unilaterally rescinds the policy and mails the beneficiaries a refund of the premiums paid under the policy.  Upon information and belief, New York Life engages in a cursory investigation and unilaterally determines the policy was obtained fraudulently, and then uses that as justification to rescind the policy.

27.     New York Life's denial of these policies is a violation of its contractual agreement. Pursuant to the incontestability clause, New York Life is given two years to contest the insurance

---

[4] *See* Exhibit A.

policy. When that period has run, New York Life cannot contest the policy, deny payment of benefits, or rescind the policy, other than for nonpayment of premiums.

28. If New York Life denied these policies within the two-year period, Plaintiff and Class Members would have been able to find alternative insurance providers, or could have remedied the alleged deficiencies, rather than believing to have adequately provided for their loved ones up to their time of death only to be met with a unilateral policy rescission.

29. Instead, beneficiaries find themselves with a nominal claim, often under $20,000, and in need of hiring counsel to pursue a claim. Further, even if they can find representation, they are forced to litigate the claim without the assistance of the deceased's knowledge of the course of dealing with New York Life, while still mourning their loved one's death.

30. New York Life's denials are in this way a product of the chief assessment tool of the insurance industry –they are an exercise in balancing risk. By designing its denials process to coincide with the simultaneous burden of bereavement on a potential plaintiff and the death of the only other signatory to the contract, New York Life is able to maximize profits, while exposing itself to a minimal risk of litigation.

## CLASS ACTION ALLEGATIONS

31. This matter is brought by Plaintiff on behalf of herself and those similarly situated, under Rule 23 of the Federal Rules of Civil Procedure. Because Defendant's conduct was uniformly designed and implemented throughout the United States and uniformly impacted and injured its users, Plaintiff seeks certification of nationwide classes under Rule 23(b)(3) and 23(b)(2).

32. The classes that Plaintiff seeks to represent are defined as follows:

> **Nationwide Class**: All persons in the United States who purchased life insurance policies from, or are the beneficiaries of, New York Life insurance policies in which the policy was rescinded after the expiration of

the two-year contestability period for any reason other than nonpayment of premiums.

**Pennsylvania Class**: All persons in the Commonwealth of Pennsylvania who purchased life insurance policies from, or are the beneficiaries of, New York Life insurance policies in which the policy was rescinded after the expiration of the two-year contestability period for any reason other than nonpayment of premiums.

33. **Numerosity/Impracticability of Joinder:** Class Members are so numerous that joinder of all members would be impractical. The proposed Classes likely contain thousands of members, but it would require information solely in the possession of the Defendant to identify the Class(es).

34. **Commonality and Predominance:** There are common questions of law and fact that predominate over any questions affecting only individual Class Members. These common legal and factual questions include but are not limited to the following:

  A. Whether New York Life's unilateral rescission of its life insurance policies after the two-year contestability period constitutes breach of contract;

  B. Whether New York Life's unilateral rescission of its life insurance policies after the two-year contestability period constitutes a violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law;

  C. Whether New York Life is liable for its unilateral rescission of its life insurance policies after the two-year contestability period under the common law principles of unjust enrichment;

  D. Whether New York Life's breach foreseeably damaged Plaintiff and Class Members;

  E. Whether New York Life's breach caused Plaintiff and the Class Members to suffer damages and, if so, the amounts thereof;

F. Whether New York Life's justification for the aforementioned contract cancellations was fraudulent.

35. **Typicality:** Plaintiff's claims are typical of the claims of the Class Members because Plaintiff's claims arise out of violations of the same incontestability clause in New York Life's form life insurance policies.

36. **Adequacy:** Plaintiff is an adequate representative who will fully and adequately assert and protect the interests of the Class and has retained class counsel who are experienced and qualified in prosecuting class actions, including in the areas of consumer protection litigation.

37. **Superiority:** A class action is superior to all other available methods for the fair and efficient adjudication of this lawsuit because individual litigation of the claims of all Class Members is economically unfeasible and procedurally impracticable. While the aggregate damages sustained by the Classes are likely in the millions of dollars, the individual damages incurred by each Class Member likely range from $10,000 to $20,000. Many individual Class Members likely do not have a significant interest in individually controlling the prosecution of separate actions, and individualized litigation would also result in varying, inconsistent, or contradictory judgments and would magnify the delay and expense to all the parties and the court system because of multiple trials of the same factual and legal issues. Plaintiff do not anticipate any difficulty in managing this litigation.

38. **Final Injunctive Relief:** Defendant has acted or refused to act on grounds generally applicable to the Class Members and, as such, final injunctive relief is appropriate, including but not limited to the injunctive relief requested below.

39.     **Notice:** Defendant has, or has access to, addresses, phone numbers, e-mail addresses, and other contact information for the Class Members, which may be used for the purpose of providing notice of the pendency of this action.

## CAUSES OF ACTION

### COUNT I
### BREACH OF CONTRACT
**(On Behalf of the Nationwide Class, or, Alternatively, the Pennsylvania Class)**

40.     Plaintiff incorporates by reference all allegations of the preceding paragraphs as though fully set forth herein.

41.     Plaintiff and New York Life entered into a contract which includes a clause barring Defendant from "contest[ing] the validity of the insurance or reinstated insurance after it has been in force for two years during the INSURED's lifetime."

42.     New York Life breached this contract through its unilateral rescission of its life insurance policies after the two-year contestability period.

43.     Plaintiff, Class Members, and their related policyholders adhered to their contractual obligations, including timely and complete payment of required premiums.

44.     New York Life damaged Plaintiff and Class Members by failing to pay out the benefits of the life insurance policies to their beneficiaries, as required under the contract upon the death of the policyholder.

### COUNT II
### UNJUST ENRICHMENT
**(On Behalf of the Nationwide Class, or, Alternatively, the Pennsylvania Class)**

45.     Plaintiff incorporates by reference all allegations of the preceding paragraphs as though fully set forth herein.

46. Plaintiff and members of the Class conferred a benefit on the Defendant.

47. Defendant had knowledge that this benefit was conferred upon it.

48. Defendant has been and continues to be unjustly enriched at the expense of Plaintiff and Class Members, and their retention of this benefit under the circumstances would be inequitable.

49. As a direct and proximate cause of Defendant's unjust enrichment, Plaintiff and the Class are entitled to an accounting, restitution, attorneys' fees, costs and interest.

**COUNT III**
**VIOLATIONS OF PENNSYLVANIA'S UNFAIR TRADE PRACTICES**
**AND CONSUMER PROTECTION LAW**
**(On Behalf of the Nationwide Class, or, Alternatively, the Pennsylvania Class)**

50. Plaintiff incorporates by reference all allegations of the preceding paragraphs as though fully set forth herein.

51. The Unfair Trade Practices and Consumer Protection Law (UTPCPL) makes failure "to comply with the terms of any written guarantee or warranty given to the buyer at, prior to or after a contract for the purchase of goods or services is made" and engagement "in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding" illegal.

52. New York Life failed to adhere to the written incontestability clause in its contract, as explained in detail, *supra*.

53. By waiting until after the death of the insured to make this challenge, New York Life has ensured that there will be confusion as to the terms and relevant conduct of the parties of the agreement.

54. These acts constitute unfair trade practices under the UTPCPL, entitling Plaintiff to recovery.

55. Pursuant to 73 Pennsylvania Statutes section 201-9.2, Plaintiff requests that the Court grant treble damages and other relief it deems just and appropriate.

## PRAYER FOR RELIEF

56. WHEREFORE, Plaintiff, on her own behalf, and all others similarly situated, respectfully demands judgment against Defendant as follows:

A. That the Court certify this lawsuit as a class action under Rules 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure, and that Plaintiff be designated as class representatives and that Plaintiff's counsel be appointed as Class Counsel;

B. That the Court award Plaintiff and Class Members damages against Defendant;

C. That the Court grant injunctive relief, including an order prohibiting Defendant from unilaterally rescinding its policies for any reason other than for nonpayment of premiums after the expiration of the contestability period;

D. That the Court award Plaintiff and the Class their costs of suit, including reasonable attorneys' fees and expenses, including expert fees, as provided by law; and

E. That the Court award Plaintiff and the Class prejudgment interest at the maximum rate allowable by law.

## DEMAND FOR JURY TRIAL

Plaintiff respectfully request a trial by jury on all claims triable as a matter of right.

Dated: April 27, 2021

By: */s/ Joseph G. Sauder*
    Joseph G. Sauder
    Joseph B. Kenney

Sonjay C. Singh
SAUDER SCHELKOPF LLC
1109 Lancaster Avenue
Berwyn, PA 19312
Phone: 610-200-0580
Fax: 610-421-1326
jgs@sstriallawyers.com
jbk@sstriallawyers.com
scs@sstriallawyers.com

*Attorneys for Plaintiff*